**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **SUSAN JONES** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )     **CIVIL ACTION NO. 1:21-00308-KD-C** |
| | ) |
| | ) |
| **STATE FARM FIRE AND CASUALTY** | ) |
| **COMPANY** | ) |
| | ) |
| **Defendant.** | ) |

## Order

This matter is before the Court on the Motion for Summary Judgment filed by Defendant

State Farm Fire and Casualty Company (Doc. 39); the Response by Plaintiff Susan Jones. (Doc.

44); Defendant's Reply (Doc. 47); Defendant's Motion to Strike (Doc. 46); Plaintiff's Response

(Doc. 49); Plaintiff's Motion to Strike (Doc. 50); and Defendant's Response (Doc. 51).

## I.  Objections Pursuant to Rule 56

The Court construes the Motions to Strike (Docs. 46, 50) as objections pursuant to Fed.

R. Civ. P. 56(c)(2).[1] State Farm objects to the affidavit of Dusty Wilson. (Doc. 46). As the Court

---

[1] "A declaration in support of a motion for summary judgment is not a pleading and is therefore
an inappropriate target of a motion to strike. Addison v. Ingles Market, Inc., No. 3:11–cv–3,
2012 WL 3600844, at *1 (M.D. Ga. Aug. 21, 2012). Indeed, Rule 56 provides that '[a] party may
*object* that the material cited to support or dispute a fact cannot be presented in a form that would
be admissible in evidence.' Fed. R. Civ. P. 56(c)(2) (emphasis added). Such an objection
'functions much as an objection at trial, adjusted for the pretrial setting,' and '*[t]here is no need
to make a separate motion to strike.*' Fed. R. Civ. P. 56 advisory committee's note (emphasis
added). 'Nonetheless, it is still common for parties to file motions to strike directed at matters
that are not contained in pleadings.' Ross v. Corp. of Mercer Univ., 506 F.Supp.2d 1325, 1333
(M.D. Ga. 2007). In such cases, courts tend to treat motions to strike as objections to the
challenged portions of affidavits. Id. at 1334. Accordingly, the Court will construe [the]
motion[s] to strike as evidentiary objections." Zottola v. Anesthesia Consultants of Savannah,
P.C., 169 F. Supp. 3d 1348, 1357 (S.D. Ga. 2013).

has not relied on any portion of that affidavit, the objection is moot.[2]

Jones' objections in Doc. 50 are duplicative of the objections raised in her Response to Motion for Summary Judgment (Doc. 44). Accordingly, Doc. 50 is moot and the objections raised in the Response (Doc. 44) will be addressed.

First, Jones argues that State Farm did not properly disclose three of its witnesses, Bendicto Aello, Jim Kane, and Tina Cooper, "as required by Rule 26(a) or 26(e)." (Doc. 44 at 24). Therefore, Jones argues, their testimony should be excluded because it would be prejudicial. (Doc. 44 at 25). State Farm responds that the declarations of Benedicto Aello and Jim Kane "are declarations that [] identify documents which were [properly and timely] disclosed," and "no substantive testimony is offered" by either of them. In regards to Tina Cooper's declaration, State Farm contends it "is made in her capacity as an assistant to Angela Taylor.[3] The initial disclosure [] stated that correspondence to and from Ms. Taylor would be used." (Doc. 47 at 5).

Federal Rules of Civil Procedure Rule 26(a) applies to initial disclosures of witnesses and documents and Rule 26(e) applies to supplementing disclosures and responses. Here, State Farm properly disclosed the possible use of underwriting documents in a supplemental disclosure pursuant to Fed. R. Civ. P. 26(e)(1) on December 17, 2021, as the Discovery Deadline was May 27, 2022.[4] (Docs. 22, 28). And, Benedicto Aello and Jim Kane identified said documents without

---

[2] Dusty Wilson is a fireman for Brewton Fire Department. His testimony was not considered because the dispositive issue in this case is whether Jones submitted to an examination under oath. Jones did not submit to an examination under oath. Thus, Wilson's testimony concerning the cause of the fire does not need to be considered or addressed.

[3] Angela Taylor is an attorney for State Farm that Jones' attorney regularly communicated with for several months prior to filing this action.

[4] Doc. 45-3 is a supplemental disclosure filed after the Discovery Deadline concerning "payment plan documents." The payment plan documents are included in Aello's declaration (cited in Doc.

providing substantive testimony – their declarations merely contained information pertaining to the renewal of the insurance policy in place at the time of this action. (Docs 36-3, 36-4). Thus, these declarations are not prejudicial to Jones. See Hewitt v. Liberty Mut. Grp., Inc., 268 F.R.D. 681, 683 (M.D. Fla. 2010) ("A failure to timely make the required disclosures is harmless when there is no prejudice to the party entitled to receive the disclosure."). Accordingly, Jones' objection to Benedicto Aello and Jim Kane's declarations on the grounds they were improperly disclosed is **OVERRULED**.

Tina Cooper's declaration is appropriate to consider because her lack of disclosure is harmless. "There is no specific analysis as to what constitutes harmless, so courts frequently consider the following factors in assessing harmlessness: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." Coleman v. Bos. Sci. Corp., 2020 WL 7090700, at *5 (S.D. Ala. Sept. 22, 2020) (collecting cases) (internal citations omitted).

Tina Cooper is an assistant to State Farm's Attorney, Angela Taylor. Tina Cooper forwarded emails to and from Angela Taylor to Jones' attorney, Karean Reynolds, for several months prior to this action being initiated. Karean Reynolds also communicated with Tina Cooper over the phone and via email. Thus, there is no surprise to Jones that Tina Cooper would be a **declarant** in this action. Reynold's, in his capacity of Jones' attorney, was fully aware of

---

36, State Farm's MSJ) and only contain information about Jones failing to pay for the Policy. (Doc. 36-3). Kane's declaration only contains information about Jones paying for the Policy. (Doc. 36-4). This information is not material to the issue before the Court.

the communications with Cooper. Accordingly, Jones' objection to Tina Cooper's declaration on the grounds she was improperly disclosed is **OVERRULED**.

Second, Jones objects to the declarations of Greg Ross, Angela Taylor, Bendicto Aello, Jim Kane, and Tina Cooper, on the grounds that they were "unsworn declarations." (Doc. 44 at 24). State Farm responds that the "declarations were submitted pursuant to the provision of 28 U.S.C. § 1746 which [] provides that a declaration under penalty of perjury, subscribed by the witness, may support evidence, establish or prove the same matters as an affidavit or oath." (Doc. 47 at 3). The Court agrees with State Farm, as 18 U.S.C. § 1746[5] expressly authorizes declarations made under the penalty of perjury to support, evidence, or establish any matter. Accordingly, Jones objections to the declarations of Ross, Taylor, Aello, Kane, and Cooper, on the grounds they are unsworn is **OVERRULED**.

Third, Jones objects to Greg Ross's declaration on the grounds that he "lacks personal knowledge" and thus his statements are "inadmissible hearsay." (Doc. 44 at 25). State Farm responds that Ross's declaration "comports with the requirements of the Federal Rules of Evidence, Rule 803(6) dealing with those records of regularly conducted activity." (Doc. 47 at

---

[5] "Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: …

**(2)** If executed within the United States, its territories, possessions, or commonwealths: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).'"

28 U.S.C.A. § 1746.

3). The Court agrees with State Farm, as Ross's declaration concerns State Farm's records of regularly conducted activity pursuant to Federal Rules of Evidence (803)(6).[6] See United States v. Arias-Izquierdo, 449 F.3d 1168, 1183 (11th Cir. 2006) ("We have held that '[t]he touchstone of admissibility under [Rule 803(6)] is reliability, and a trial judge has broad discretion to determine the admissibility of such evidence ....'") (internal citations omitted). Accordingly, Jones' objection to Greg Ross's declaration on the grounds it is inadmissible hearsay is **OVERRULED**.

Jones also objects to the admission of three letters from State Farm employees Greg Ross and Jon Hatch (Doc. 36-2, PageID. 449-458) wherein Jones is asked to complete and return a sworn affidavit and submit to an examination under oath. As grounds, Jones argues that because State Farm was represented by Angela Taylor when the letters were sent, Jones and her attorney had no duty to respond, and therefore, evidence of her failure to respond is not admissible (Doc. 44 at 26-27) ("The evidence is inadmissible as Susan Jones and her attorney was under a duty to not communicate as [State Farm] was represented by counsel."). In support, Jones cites to the Alabama Professional Rules of Conduct 4.2, which in relevant part states that a lawyer cannot

---

[6] "The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: … **(6) Records of a Regularly Conducted Activity.** A record of an act, event, condition, opinion, or diagnosis if:

    **(A)** the record was made at or near the time by--or from information transmitted by-- someone with knowledge;

    **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

    **(C)** making the record was a regular practice of that activity;

    **(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

    **(E)** the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."

Fed. R. Evid. 803.

communicate with a person, i.e, Ross and Hatch, when the lawyer knows that person is represented by counsel, except in limited circumstance that do not appear to exist.

The objection is **OVERRULED**.  Whether Reynolds', on behalf of Jones, could respond to the request directly to Ross or Hatch is not relevant to whether the documents are admissible. The documents are admissible to support State Farm's contention that they requested on numerous occasions that Jones submit to an examination under oath.

Last, Jones objects to the correspondence between Jones' counsel and State Farm's counsel on the grounds that the communications are irrelevant and inadmissible because they allegedly pertain "directly to settlement negotiations" in violation of Federal Rules of Evidence 408. (Doc. 44 at 27). State Farm responds that "[n]one of the letters had anything to do with settlement or compromise," the word "settlement" was never mentioned, and Federal Rules of Evidence 408 does not preclude the correspondence. (Doc. 47 at 4). The Court agrees with State Farm after careful review of the communications between counsel. The communications pertain to the handling of the underlying insurance claim and there is no reference to negotiations or settlement. Accordingly, Jones' objection to the correspondence between Jones' counsel and State Farm's counsel is **OVERRULED.**

## II.    <u>Findings of Fact</u>[7]

Plaintiff Susan Jones ("Jones") entered into an insurance contract (the "Policy") with Defendant State Farm Fire and Casualty Company, an Illinois Corporation, ("State Farm") with a policy period from July 28, 2020 – July 28, 2021 (the "Policy Period") to ensure Jones' property

---

[7] The facts are taken in the light most favorable to the non-movant. <u>Tipton v. Bergrohr GMBH–Siegen</u>, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." <u>Priester v. City of Riviera Beach</u>, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

at 1119 Kerlin Avenue, Brewton Alabama, 36426 (the "Property"). (Doc. 36-1 at 3). The Policy

provided coverage for "direct physical loss" to 1) the dwelling and 2) personal property. (Doc.

36-1 at 24). The Policy places conditions on the insured after a loss is incurred:

2. **Your Duties After Loss.** After a loss to which this insurance may apply, **you** must cooperate with **us** in the investigation of the claim and also see that the following duties are performed:

    a. give immediate notice to **us** or **our** agent and also notify:

        (1) the police if the loss is caused by theft, vandalism, or any other criminal act; and

        (2) the credit card company or bank if the loss involves a credit card or bank fund transfer card;

    b. protect the property from further damage or loss and also:

        (1) make reasonable and necessary temporary repairs required to protect the property; and

        (2) keep an accurate record of repair expenses;

    c. prepare an inventory of damaged or stolen personal property:

        (1) showing in detail the quantity, description, age, replacement cost, and amount of loss; and

        (2) attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

    d. as often as **we** reasonably require:

        (1) exhibit the damaged property;

        (2) provide **us** with any requested records and documents and allow **us** to make copies;

  (3) while not in the presence of any other ***insured***:

    (a) give statements; and

    (b) submit to examinations under oath; and

  (4) produce employees, members of the ***insured's*** household, or others for examination under oath to the extent it is within the ***insured's*** power to do so; and

 e. submit to ***us***, within 60 days after the loss, ***your*** signed, sworn proof of loss that sets forth, to the best of ***your*** knowledge and belief:

  (1) the time and cause of loss;

  (2) interest of the ***insured*** and all others in the property involved and all encumbrances on the property;

  (3) other insurance that may cover the loss;

  (4) changes in title or occupancy of the property during the term of this policy;

  (5) specifications of any damaged structure and detailed estimates for repair of the damage;

  (6) an inventory of damaged or stolen personal property described in 2.c.;

  (7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

  (8) evidence or affidavit supporting a claim under **SECTION I – ADDITIONAL COVERAGES**, **Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money** coverage, stating the amount and cause of loss.

Doc. 36-1 at 32.

   A fire occurred at the Property on August 20, 2020. (Doc. 36-2 at 2; Doc. 44-3 at 4). On August 21, 2020, State Farm sent a claims specialist, Jason Handley ("Handley"), to the Property to investigate the fire damage and determine whether State Farm owed coverage. Shortly

thereafter, State Farm transferred the claim to a special investigation unit to look further into the origin of the fire. (Doc. 36-2 at 10). A request for claim service and non-waiver of rights was issued by State Farm and signed by Jones on October 7, 2020, stating that "[t]here is a question as to whether the cause and origin of the fire at [the Property] was accidental in nature. It is undetermined if any insured was involved in setting the fire or having it set on their behalf." (Doc. 36-2 at 15).

R.K. Bell Consulting Fire & Explosion began investigating the fire on August 25, 2020, and issued a detailed report on their findings on September 20, 2020. (Doc. 36-2 at 46). The fire report concluded:

> * The fire is **Incendiary** as classified by NFPA 921 (2017ed.).
>
> * The first fire originated along the north wall of the northeast bedroom at the window. Burn damage to the drapes, the burn damage to the drywall east of the window, and the debris at floor level below the window support the origin determination of the first fire. The second area of origin is located inside the southwest bedroom along the southwest corner. Burn damage to the pile of clothes, linens, and other items in the southwest corner of this room and the eyewitness account of the fire department support the second area of origin.
>
> * The cause of the fire is from the intentional human act of igniting the available combustible items in the two different non-communicating areas of origin with an open flame source.

Doc. 36-2 at 52.

State Farm then determined it would be necessary for Jones to submit to an examination under oath, as required by the Policy, to continue their investigation of the fire. (Doc. 36-2 at 28). State Farm retained Butler Snow, LLP ("Butler Snow") to perform the examination under oath and attorney Angela Taylor of Butler Snow contacted Jones to notify her of such on November 12, 2020. (Doc. 36-5 at 4). Thereafter, Jones retained attorney Karean Reynolds to represent her in her claim and Reynolds notified Butler Snow on December 2, 2020. (Doc. 36-5 at 8).

In response to Reynolds' notification, Taylor forwarded to Reynolds the November 12 correspondence, which requested Jones to submit to an examination under oath. (Doc. 36-5 at 10). In a December 17, 2020, email, Reynolds told Butler Snow that Jones would be filing a breach of contract and bad faith claim "by the end of next week." (Doc. 36-5 at 11). Taylor then sent another letter to Reynolds and pointed out the conditions precedent in the Policy, including submitting to the requested examination under oath and providing necessary documents.[8] (Doc. 36-5 at 13-14).

Taylor and Reynolds corresponded periodically from December 2020 through June 2021 regarding the collection of various documents outlined in the Policy and requested by State Farm.[9] (Doc. 36-5 at 10). Taylor told Reynolds on multiple occasions that the collection of the documents were needed prior to performing the examination under oath. (Doc. 36-5 at 10, 15, 18-19, 21, 35-37). Some of these documents, including an inventory report, proof of loss, and bank records,[10] were provided by Jones. (Doc. 36-5 at 35-36). Other requested documents, including proof of ownership of personal property, were not provided to State Farm. Id. Then on May 27, 2021, Taylor requested Jones, through Reynolds, to supply the remaining documents and to suggest available dates to schedule the examination under oath. (Doc. 36-5 at 35-37).

Jones never supplied the requested documents and did not schedule or participate in an examination under oath.  Instead, Jones commenced the present action on June 15, 2021, asserting breach of contract (Count 1) and bad faith (Count 2) claims against State Farm. At the

---

[8] Taylor also directed Reynolds to an Alabama case that sets out Alabama law regarding both insured's and insurer's duties for satisfying conditions precedent, Nationwide Insurance Company v. Nilsen, 745 So. 2d 264 (Ala. 1998). (Doc. 36-5 at 15).
[9] State Farm extended the deadline for documents to be submitted.
[10] Jones did not supply all requested bank records. (Doc. 36-5 at 35).

time this action was filed, State Farm had neither approved nor denied Jones' claim. (Doc. 36-2 at 3).

### III.   <u>Standard of Review</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56(c) provides as follows:

> *(c) Procedures*
> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. Rule 56(c).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991) (quoting <u>Celotex Corp. v. Catrett</u>, 477

U.S. 317, 323 (1986)).  If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment.  Celotex, 477 U.S. at 323.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

## IV.   **Applicable Law**

The Policy does not contain a choice of law provision. The Policy was issued and delivered to Jones in Alabama. The incident giving rise to the insurance claim occurred in Alabama. Accordingly, Alabama law applies to the interpretation of the policy. See Stovall v. Universal Construction Co., 893 So.2d 1090 (Ala. 2004) ("In a contractual dispute, Alabama law would have us first look to the contract to determine whether the parties have specified a particular sovereign's law to govern. Cherry, Bekaert & Holland v. Brown, 582 So.2d 502, 506 (Ala. 1991). Lacking such a contractual specification, we follow the principle of *lex loci contractus,* applying the law of the state where the contract was formed. Brown, 582 So.2d at 506. That state's law then governs unless it is contrary to the forum state's fundamental public policy. Id. at 506–07.").

Since "general rules of contract law and interpretation govern the interpretation of an insurance policy, Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co., 817 So.2d 687, 691 (Ala. 2001), the [C]ourt must assign the insurance policy its clear and plain meaning and interpret it to give effect to all terms and provisions. See Brewbaker Motors, Inc. v. Belser, 776 So.2d 110, 112 (Ala. 2000); Bd. of Water & Sewer Comm'rs of Mobile v. Bill Harbert Constr. Co., 870 So.2d

699, 710 (Ala. 2003). If an insurance policy is ambiguous, or its meaning is in doubt or

uncertain, it is construed against the insurer. Scottsdale Ins. Co. v. National Security Fire and

Casualty Ins. Co., 741 So.2d 424, 426, 427 (Ala. Civ. App. 1999)." Cont'l Cas. Co. v. Alabama

Emergency Room Admin. Servs., P.C., 623 F. Supp. 2d 1290, 1294 (M.D. Ala.), aff'd, 355 F.

App'x 332 (11th Cir. 2009).

**V.   Analyses**

**A.  Breach of Contract**

Count 1 of the complaint is a breach of contract claim. State Farm argues that Jones did

not satisfy the requisite conditions precedent for coverage prior to filing this action and thus it

did not breach the contract. Jones responds that she tried to satisfy the necessary conditions

precedent but State Farm rejected her attempts.

Under Alabama Law, a plaintiff must prove four elements to recover on a breach of

contract claim: "'(1) the existence of a valid contract binding the parties in the action, (2) [their]

own performance under the contract, (3) the defendant's nonperformance, and (4) damages.'"

Employees' Benefit Ass'n v. Grissett, 732 So.2d 968, 975 (Ala. 1998) (quoting Southern Med.

Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala. 1995))." Cong. Life Ins. Co. v. Barstow, 799

So. 2d 931, 937 (Ala. 2001); see also Arrington v. Wells Fargo, 842 F. App'x 307, 312 (11th Cir.

2020).

It is well established that:

[u]nder Alabama law, where an insured fails to comply with a condition precedent
to recovery under an insurance contract, the insured cannot sustain a breach of
contract claim. See, e.g., Nationwide Ins. Co. v. Nilsen, 745 So.2d 264, 269
(Ala.1998); Akpan v. Farmers Ins. Exchange, Inc., 961 So.2d 865, 872
(Ala.Civ.App.2007). Simply put, "an insured must comply with his or her post-
loss obligations when the insured is making a claim upon the insurer, and meeting
those obligations is a precondition to any duty on the part of the insurer to make a
loss payment." Baldwin Mut. Ins. Co. v. Adair, Case No. 1100872, —— So.3d ——

13

–, ——, 2014 WL 4851516, at *11 (Ala. Sept. 30, 2014) (citations omitted).
Accordingly, an insurer's "obligation to pay or evaluate the validity of the claim
does not arise until the insured has complied with the terms of the contract with
respect to submitting claims." Id. (citing United Ins. Co. of Am. v. Cope, 630
So.2d 407, 411 (Ala. 1993)).

Morton v. Auto. Ins. Co. of Hartford, Conn., 102 F. Supp. 3d 1248, 1260 (N.D. Ala. 2015).

State Farm argues that Jones failure to satisfy a condition precedent to coverage, submitting to an examination under oath, defeats the breach of contract claim. In support, State Farm contends that an examination under oath as a condition precedent "has been approved by this Court and by the Alabama Supreme Court." (Doc. 36 at 17) (citing Apkan v. Farmers Insurance Exchange, 961 So. 2d 865, 872 (ALA 2007); Nationwide Insurance Company v. Nilsen, 745 So. 2d 264, 267 (Ala. 1998); State Farm Fire and Casualty Company v. Richardson, 2008 WL4531765, *5 (S.D. Ala., Northern Division, Oct. 9, 2008); Hillery v. Allstate Indemnity Company, 705 F. Supp. 2d 1343, 1362 (S.D. Ala. 2005) ("Courts have routinely upheld the validity of such 'duties after loss' provisions obliging an insured to furnish information and documents to the insurer.")). State Farm argues further that "an insurer's obligation to pay or evaluate the validity of an insured's claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims," and Jones failed to comply with the terms of the Policy with respect to submitting claims. (Doc. 36 at 17) (citing Nilsen, 745 So.2d at 267).

Jones responds summarily, and without any specific evidence, that she made herself available for an examination under oath and that State Farm refused to allow her access to an examination under oath. Jones cites to numerous cases outlining an insured's duty to submit to an examination under oath as a prerequisite to receiving coverage. (Doc. 44 at 32) (citing Nilsen, 745 So.2d at 266; Akpan 961 So.2d at 872; Richardson, 2008 WL4531765, *7). However, Jones

14

asserts the facts of this case are distinctive because Jones allegedly "did not decline to submit to the examination under oath…" and "[i]n this case … gave statements…" (Doc. 44 at 32). Moreover, Jones contends, again summarily and without substantiating evidence, that "Plaintiff attempted to schedule Examination under Oath with Defendant's attorney. These attempts were unsuccessful. The Defendant intentionally refused to allow the Plaintiff to conduct the examination under oath." (Doc. 44 at 33). Jones also argues that there is no evidence of her alleged refusal to submit to an examination under oath.

The dispositive issue is whether there is sufficient evidence from which a reasonable jury could find that Jones submitted to an examination under oath or at least agreed to do so when requested. State Farm has submitted numerous communications showing its requests for the examination under oath between November 2020 through June 2021, prior to the lawsuit being filed. State Farm also clearly pointed out to Jones that she was obligated to sit for an examination under oath. After six months of requests from State Farm's attorney, Taylor, Jones finally submitted some, but not all of the requested documents. Yet, the two subsequent requests for the remaining documents and to schedule an examination under oath were met with a response that Jones was filing a lawsuit and further requests for information would be produced in discovery.

The only possible evidence refuting that Jones failed to provide an examination under oath or at least to let State Farm know she was available to provide the examination under oath is her conclusory statement in her deposition that she was available and willing to sit for an examination under oath. (Doc. 43-1 at 1; Doc. 43-6 at 7). Also, there is an ambiguous email where her attorney, Reynolds, says "we have attempted several times to schedule the deposition." (Doc. 36-5 at 40). However, Jones has failed to produce any evidence to support her

statement. Neither Jones or Reynolds have provided an affidavit explaining when or how they communicated to State Farm that Jones was willing to comply with the requested examination under oath. These conclusory allegations without supporting evidence are insufficient to create a dispute of fact. See Hansen v. Perry Techs., 206 F. Supp. 2d 1223, 1225 (S.D. Fla. 2002) (citation omitted) ("[M]ere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment."); M Ship Co. v. Ice Marine Ltd., 2008 WL 11403231, at *1 (S.D. Fla. Nov. 21, 2008), aff'd, 351 F. App'x 433 (Fed. Cir. 2009) ("[C]onclusory statements and attorney arguments do not create a genuine issue of material fact."); Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005) ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion.") (internal citations omitted). The only evidence of record is that State Farm tried to schedule an examination under oath.  There is no evidence that Jones cooperated in the request.

Accordingly, the Court finds that Jones did not satisfy a necessary condition precedent pursuant to the Policy by failing to participate in an examination under oath. This failure is dispositive. See Morton 102 F. Supp. at 1260  ("Under Alabama law, where an insured fails to comply with a condition precedent to recovery under an insurance contract, the insured cannot sustain a breach of contract claim) (citations omitted); see also Nilsen 745 So.2d 264 (Failure to comply with a condition precedent, specifically submitting to an examination under oath, precludes an insured's breach of contract claim.). Therefore, Jones' breach of contract claim fails as a matter of law.

**B.  Bad Faith**

Jones argues that State Farm acted in bad faith in how the claim was handled. In Alabama, it is well settled that "contractual liability is a prerequisite for liability for bad faith." Cong. Life Ins. Co. v. Barstow, 799 So. 2d 931, 937 (Ala. 2001). Thus, Jones' bad faith claim fails as a matter of law.

**VI.    Conclusion**

Defendant State Farm's Motion for Summary Judgment is **GRANTED** as to all Counts (Counts I-II).

A Final Judgment consistent with terms of this Order shall be entered by separate document as required by Rule 58(a) of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this the 3rd day of **August 2022.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

17